79C01-2407-CT-000144
Tippecanoe Circuit Court

Filed: 7/7/2024 6:49 PM
Clerk
Tippecanoe County, Indiana

## STATE OF INDIANA
## CIRCUIT COURT OF TIPPECANOE COUNTY

| | | | |
|---|---|---|---|
| Matthew Bunch, | | : | |
| | Plaintiff, | : | CIVIL ACTION |
| v. | | : | |
| Trans Union LLC, | | : | CAUSE NO. 79C01-2407-CT |
| | Defendant. | : | |

## COMPLAINT

### *Introduction*

1. Despite Mr. Bunch disputing and providing Defendant with documents—including judgments in his favor indicating Mr. Bunch owed nothing—Defendant recklessly failed to conduct no investigation (a/k/a reinvestigation) after receiving Mr. Bunch's disputes. Defendant maintained that the information Mr. Bunch disputed in his file was accurate and verified when neither was true. Defendant's conduct is part of a pattern of noncompliance with the FCRA, not just with Mr. Bunch but the consumer rights of various consumers.

2. Defendant disregards its federal obligations, including by repeatedly parroting information by furnishers (the source of inaccurate information), regardless of the fact that the furnishers have proven to be unreliable sources. See TU-000278-TU-000335.

### **Defendant's Historic Disregard for its Legal Obligations**

3. Consumer reporting agencies have long been on notice, and the Defendant here has a long history, of parroting. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."

1

4. Defendant, one the largest consumer reporting agencies in the world, makes $billions selling third party consumers' data. But the conglomerate does nothing to determine whether disputed credit items are inaccurate in complete disregard of consumer rights.

### Mr. Bunch owed nothing to Midland. Confirmed by Judgments

5. Midland Credit Management, Inc. brought a lawsuit against Matthew Bunch alleging $3,300 to be owed. Mr. Bunch denied owing any money to Midland, and the lawsuit was dismissed with prejudice in favor of Mr. Bunch. On 04/26/22, Midland's lawsuit and claim for $3,300 was dismissed with prejudice.

6. Midland Credit Management, Inc. brought a lawsuit against Matthew Bunch alleging ~$4,106 to be owed. Mr. Bunch denied owing any money to Midland, and the lawsuit was dismissed with prejudice in favor of Mr. Bunch. On 06/05/23, the Tippecanoe County Court issued a summary judgment in favor of Mr. Bunch. The judgment states, in part, "Bunch does not owe anything to Midland." TU-000337.

7. After more than half a year, the Midland credit reporting for the $3,300 was reporting on Mr. Bunch's credit file with Defendant.

8. Even following the summary judgment rendered in favor of Mr. Bunch concerning the ~$4,106 Midland account, Defendant reported that tradeline, too.

### *Mr. Bunch made Persistent Detailed Disputes to Defendant concerning the Midland Tradelines*

### December 2022 Dispute

9. Through a letter dated December 3, 2022, Mr. Bunch disputed the Midland tradeline with Defendant by mail. TU-000042-TU-000047.

10. Defendant negligently and recklessly failed to conduct an investigation, or reinvestigation, into Mr. Bunch's December 2022 dispute.
11. Defendant mailed Mr. Bunch investigation results indicating that the disputed information was verified as accurate, including a balance of $3,300. TU-000067.

### February 2023 Dispute

12. On 2/10/23, Mr. Bunch disputed the Midland tradeline with Defendant by phone.
13. Defendant's agent falsely identified himself as "Oscar."
14. Defendant negligently and recklessly failed to conduct an investigation, or reinvestigation, into Mr. Bunch's February 2023 dispute.

### March 2023 Dispute

15. Through a letter dated March 10, 2023, Mr. Bunch disputed the Midland tradeline with Defendant by mail. TU 000103-TU-000220.
16. Defendant negligently and recklessly failed to conduct an investigation, or reinvestigation, into Mr. Bunch's March 2023 dispute.
17. Defendant mailed Mr. Bunch investigation results indicating that the disputed information was verified as accurate, including a balance of $3,300. TU-000235.

### June 2023 Dispute

18. On June 6, 2023, Mr. Bunch disputed two Midland tradelines (indicating balances of $4,106 and $3,300) with Defendant. TU-000277-379.
19. Defendant negligently and recklessly failed to conduct an investigation, or reinvestigation, into Mr. Bunch's June 2023 dispute.
20. Defendant's conduct, including its negligence and recklessness, has adversely affected Mr. Bunch, both causing and being substantial facts in bringing about stress.

### The Disputed Midland Tradelines in Defendant's File Were Inaccurate

21. The Midland tradeline (indicating a balance of $3,300) was inaccurate, including when Mr. Bunch disputed the tradeline.

22. The Midland tradeline (indicating a balance of $3,300) was incomplete, including when Mr. Bunch disputed the tradeline.

23. Mr. Bunch legally owed nothing to Midland on the account indicating a $3,300 tradeline when Mr. Bunch disputed the tradeline with Defendant.

24. The Midland tradeline (indicating a balance of $4,100-$4,106) was inaccurate, including when Mr. Bunch disputed the tradeline.

25. The Midland tradeline (indicating a balance of $4,100-$4,106) was incomplete, including when Mr. Bunch disputed the tradeline.

26. Mr. Bunch legally owed nothing to Midland on the account (see tradeline indicating a balance of $4,100-$4,106) when Mr. Bunch disputed the tradeline with Defendant.

27. Nothing in Defendant's credit file for Mr. Bunch indicated that Mr. Bunch had a judgment in his favor, had already been sued, that he could not be garnished or subject to legal collection remedies, or that he could not legally be sued again concerning the Midland tradelines.

### Defendant Sells Data Contained in Consumers' Files for Profit (regardless of whether it happened with Mr. Bunch)

28. Defendant is a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

4

29. Although Defendant may not have sold a consumer report concerning the issues in this lawsuit, Defendant's derived profit enables Defendant sufficient resources to complete its federal obligations.
30. The information Defendant sells about consumers comes from different sources, including data furnishers like banks, loan servicers, and debt collectors.
31. A data furnisher is an entity that reports data to Defendant.
32. Data furnishers can be banks, finance companies, retail merchants and debt collectors.
33. Defendant keeps track of what type of furnisher is providing data.
34. Defendant knows the difference between a bank, finance company, and a debt buyer or debt collector.
35. One aspect of Defendant's business is that Defendant sells its consumer reports to third parties.
36. When information is sold to a third party requesting information on a consumer, that information comes from Defendant's credit file for that consumer.
37. When Defendant provides credit data concerning a consumer, the data comes from Defendant's credit file.
38. If credit data is requested, it comes from Defendant's credit database.
39. Defendant's consumer reports may include collection tradelines.
40. When Defendant receives data from data furnishers (like Midland Credit Management, Inc.), Defendant puts that information into the appropriate consumer's credit file.
41. Midland Credit Management, Inc. sent Defendant information about Mr. Bunch.
42. Defendant placed the data from Midland into Mr. Bunch' Defendant file.

5

### The Dispute Processing Agent:
### Teleperformance Business Services US, LLC
### a/k/a Intelenet

43. Foreign or domestic, the people who work on Defendant's behalf concerning disputes from consumers are customarily called dispute agents.

44. Defendant's dispute agents process a dispute by ultimately pressing a submit button.

45. All of the agents tasked with processing Mr. Bunch's disputes live and work in India.

46. Defendant's response to a consumer's dispute is not intended to determine whether the item is inaccurate. Instead, Defendant's dispute process presumes accuracy when following Defendant's policies and procedures.

47. Defendant has chosen to outsource many of the disputes it receives to a company in India called Teleperformance.

48. Teleperformance has been a vendor for Defendant for at least a decade.

49. Teleperformance has engaged in a common joint venture with Defendant to provide services for Defendant. Teleperformance profits from this.

50. Teleperformance and Defendant are mutual agents with regard to the investigation of consumer credit data.

51. Defendant outsources certain credit disputes processing to a company which employs people in India, named Teleperformance Business Services US, LLC.

52. Defendant has a contract with Teleperformance for Teleperformance to perform Defendant's federally mandated dispute reinvestigations and processing of consumer disputes, all for the benefit of the consumer. The consumer here is Mr. Bunch. Defendant delegated its 15 U.S.C. § 1681i obligation to Teleperformance,

6

conferring those duties upon Teleperformance. Teleperformance assumed these duties.

53. But Teleperformance failed to perform as required. This harmed Mr. Bunch as she was deprived of the benefit intended, including a corrected credit file and prompt notice.

54. Teleperformance is registered with the Indiana Secretary of State as a Pennsylvania limited liability company with its principal office in Utah. Teleperformance's registered agent is C T CORPORATION SYSTEM, 334 North Senate Avenue, Indianapolis, IN 46204.

55. Defendant has the same policies and procedures for itself as it has for Teleperformance.

56. As part of managerial control, Defendant can talk to an agent at Teleperformance who worked on an Defendant file.

### Defendant's Responses to Mr. Bunch's Disputes

57. Mr. Bunch's written disputes were scanned into Defendant's system and then placed into a queue.

58. One of Defendant's stated purposes is to ensure maximum possible accuracy.

59. The results of Mr. Bunch' disputes, along with other consumers' disputes, reveal Defendant refusal to give due regard to a court order.

60. Defendant will not independently suppress or modify disputed information using a court order.

61. In processing Mr. Bunch's dispute, Defendant never determined whether the disputed information was accurate.

62. In processing Mr. Bunch's dispute, Defendant never reviewed any court docket.

7

63. In processing Mr. Bunch's dispute, Defendant never called Mr. Bunch, the furnisher, or the alleged original creditor of the disputed item.
64. The dispute agent Defendant's records lists as processing Mr. Bunch's disputes, shown by TU-000001 all to be "at Intelenet", are:
    a. Avinash Mhatale
    b. JohnMark Rosete
    c. Jasmita Desai
65. Each of the dispute agents tasked with processing Mr. Bunch' disputes, concerning the Midland tradeline, live and work in India.

### *How a Dispute Flies Through Defendant's System*

66. When a phone dispute is made to Defendant by a consumer, the agent on the phone with a consumer enters information into Defendant's computer system in order to generate an ACDV, which takes place when the agent selects a submit button.
67. Defendant does not know whether it would be wrong to violate the law.
68. While Defendant claims people were involved in processing Ms. *'s disputes, Defendant never spoke to them.
69. Concerning Mr. Bunch, Defendant never tried communicating with the people it claims were involved in processing Mr. Bunch' disputes.
70. The people Defendant claims were involved in Mr. Bunch's disputes followed Defendant's policy.
71. Defendant's position is that the people Defendant claims were involved in processing Mr. Bunch's disputes did nothing wrong.

8

### *The So-called 'Reinvestigation' Process*

72. Defendant is required to perform a reinvestigation when it receives notice from a consumer about information that is either incomplete or inaccurate in the consumer's credit file.

73. The requirement that Defendant fulfill—upon receiving notice from a consumer of incomplete or inaccurate information in the consumer's file—is called a reinvestigation.

74. An investigation is supposed to be the result of research and investigation done in order for a data furnisher to prepare an investigative report.

75. A reinvestigation by a consumer reporting agency therefore presumes some investigation was already to have taken place.

76. Defendant does not know whether the data furnishers do any actual investigation before providing data to Defendant.

77. Defendant does not actually know what the dispute processing agents actually do.

78. Defendant claims to have contractual agreements with data furnishers that provide data to Defendant.

79. These contractual agreements are sometimes called subscriber agreements.

80. Defendant maintains that its subscriber agreements are confidential.

81. Defendant had a subscriber agreement with Midland Credit Management, Inc.

82. Defendant has not provided its subscriber agreement with Midland Credit Management, Inc. to Mr. Bunch or his counsel.

### *Policies and Procedures*

83. Defendant's position pertaining to Mr. Bunch' disputes is that everyone did everything adhering to policy.

9

84. Defendant has no unwritten policies or procedures.
85. Defendant's dispute agents were not permitted to independently make any changes to Mr. Bunch's file based on the information she provided.
86. Defendant's performance concerning Mr. Bunch's disputes was done with the intent of Defendant's policies and procedures.
87. Pertaining to Mr. Bunch's disputes and how they were handled, Defendant's dispute processing was handled based upon Defendant's policies and procedures with the intent of following Defendant's policies and procedures.
88. Defendant takes the position that its policies and procedures were put in place based in part on Defendant's understanding of the law.
89. Defendant provided to Mr. Bunch the results of Defendant's "reinvestigation."
90. The results of Defendant's "reinvestigation" process were as envisioned by Defendant.

### *Defendant Has Policies to Allowing Review and Reliance on /Bankruptcy Court Records, but Not for Orders from Other Courts Establishing that Consumer Do Not Owe Debts*

91. Defendant has policies and procedures in place concerning people who have filed for bankruptcy which allows dispute agents access to the internet to go to an online court docket and pull up court orders with respect to a bankruptcy discharge.
92. Defendant's policies and procedures allow Defendant's dispute agents to access and review bankruptcy discharge orders and to change the information in Defendant's file based on that information.

93. In the context of disputes involving bankruptcy items, Defendant's authorized dispute processing agents are permitted to review court orders and online court dockets.

94. Some of the tools available to some of Defendant's dispute agents include accessing the internet for reviewing court dockets that contain orders.

95. Outside of the bankruptcy context, Defendant has no policy or procedure in place which allows its dispute processing agents to review court dockets or orders from those dockets and use that information to make changes to a consumer's file.

### *General Disputes are Treated Differently*

96. While Defendant's dispute agents are physically capable of accessing and reviewing the information in a court docket, Defendant's general dispute processing agents are not allowed to go outside of Defendant's policies and procedures.

97. With respect to Mr. Bunch's disputes, reviewing a court's docket was not available as part of Defendant's process.

98. No one at Defendant was allowed to review court dockets concerning Mr. Bunch' disputes, per Defendant's policy.

99. Defendant does not know if the dispute processing agents tasked with handling Mr. Bunch's disputes had access to outside websites.

100. Defendant has the resources to put in place the capability to allow its dispute agents access to the internet.

101. Defendant will not allow all of its dispute agents to look for documents from a court either physically in person or electronically over the internet.

11

102. The individuals who processed Mr. Bunch's disputes did not have the authority in their roles to access court orders on the internet.

103. The individuals who processed Mr. Kurtis's disputes acted within Defendant's policy.

104. With the exception of one of Defendant's templated letters that had nothing to do with the investigation, Defendant processed Mr. Bunch's disputes precisely as Defendant intended.

105. The way Defendant processed Mr. Bunch's disputes was not an accident.

106. One of Defendant's templated letters to Mr. Bunch did not include the pre-populated information Defendant intended.

107. Other than Defendant's letter omitting pre-populated information, there were no system issues in this case.

### *Defendant Has No Knowledge Of What Dispute Agents Did Or Considered*

108. Outside of what Defendant can read in documents, Defendant does not know what its dispute processing agents did, reviewed or considered.

109. Defendant does not know whether its dispute processing agents wanted more information.

110. Defendant claims it assisted Mr. Bunch.

### *Defendant's Agents Blindly Adhere To Unreasonable Policies*

111. Defendant's expectation is that everyone working for Defendant would do what is expected of them, which is to adhere to Defendant's policies.

112. The policies, concerning Mr. Bunch's disputes, that were in place at the time of Mr. Bunch's disputes are the same policies in place today.

113. There have been no changes to Defendant's policies since Mr. Bunch made his disputes.

### *Disputes Involving Court Orders – Defendant's Repeated History of Claiming to Data which Contradicts Court Orders has been "Verified"*

114. Among the disputes Defendant receives from consumers, Defendant has received disputes where the consumer has indicated information is inaccurate and provides a court order as support.

115. Mr. Bunch was not the first person to dispute information in his or her Defendant file based on having a court order in their favor.

116. This is not the first case in which Defendant has been a defendant where Defendant's responses concerning court orders were an issue in the case.

117. Defendant does not know if the people involved in processing Mr. Bunch's disputes were ever notified that their dispute processing is the subject of a lawsuit.

118. Defendant does not know whether it has required the dispute agents who processed Mr. Bunch's disputes to do anything differently in the way they process disputes.

119. Defendant received multiple disputes from Fabian Huizar disputing an item in his Defendant file and providing Defendant a court order which established nothing was owed as a matter of law.

120. Defendant did not remove, suppress or modify the information disputed by Fabian Huizar in response to his dispute.

121. Defendant received a dispute from Erin Browne f/k/a Erin Livesay disputing an item in her Defendant file and providing Defendant a court order which established nothing was owed as a matter of law.

122. Defendant did not remove, suppress or modify the information disputed by Erin Browne f/k/a Erin Livesay in response to her dispute.

123. Defendant received a dispute from Zepherine Miller disputing an item in her Defendant file and providing Defendant a court order which established nothing was owed as a matter of law.

124. Defendant did not remove, suppress or modify the information disputed by Zepherine Miller in response to her dispute.

125. Defendant received disputes from Diana Barker disputing an item in her Defendant file and providing Defendant a court order which established nothing was owed as a matter of law.

126. Defendant did not remove, suppress or modify the information disputed by Diana Barker in response to his dispute.

127. Defendant treated Mr. Bunch in the exact same manner as any other consumer in his situation.

### *Defendant Unmistakably Received the Judgment from Mr. Bunch*

128. Prior to processing Mr. Bunch's dispute, Defendant received the judgment concerning the Midland tradeline listing a balance of approximately $3,300.

129. Prior to processing Mr. Bunch's dispute, Defendant received the judgment concerning the Midland tradeline listing a balance of approximately $4,100.

130. Defendant has no reason to believe that the court orders Mr. Bunch provided to Defendant were not valid or not authentic.

131. Defendant believes the Court orders provided with Mr. Bunch's disputes to be valid.

### *Unreasonable & Reckless Policy*

132. Recklessly, Defendant has failed to put in place any policy which is designed to ensures—or even determine—accuracy concerning its data and reports.

133. Defendant has no policy in place for disputes when consumers have judgments or court orders as proven by multiple consumers' disputes, with judgments in their favor establishing the inaccuracy of Defendant's files, has repeatedly resulted in Defendant failing to correct, delete, suppress or modify the inaccurate items.

134. Defendant has more subscribers than Defendant can monitor.

135. Defendant knows the number of subscribers that Defendant has had in the years 2022, 2023 or 2024.

136. Defendant has sufficient resources to enable it to conduct reasonable and complete investigations, including reinvestigations.

137. Defendants knows its revenue and profit for each quarter since 2022.

138. Defendant's reinvestigation process is designed to process, without complete investigations, Defendant's significant volume of credit file disputes.

139. Defendant knows, or can estimate, the number of disputes Defendant's has received and processed concerning disputes of an item in a consumer's file in the since 2022.

140. Defendant has a pattern of disregarding court orders and judgments concerning credit disputes.

141. Defendant can identify, or estimate, the number of disputes in which Defendant has been alerted to the existence of a court order that consumers claim affects the disputed information.

142. Defendant could perform reasonable reinvestigations if it hired actual investigators, properly trained them, and permitted them to actually investigate.

143. Defendant can state—and has documents to support—its labor costs for processing consumer credit file disputes.

144. Defendant knows, and has documents supporting, the number of individuals processing consumer disputes or reinvestigations:

    a. employed by Defendant working in a foreign country;

    b. employed by Defendant working in the United States;

    c. employed by a vendor or contractor working in a foreign country.

    d. employed by a vendor or contractor working in the United States.

145. Defendant has its own financial statements for the calendar years 2022, 2023, and the completed quarters for 2024.

146. Defendant knows its projected revenue and profit.

147. Defendant has not produced its financial statements to Plaintiff or his counsel.

148. Defendant has its own balance sheets.

149. Defendant conducts credit file dispute processing in India and the United States.

150. Defendant does not have enough dispute agents to properly respond to the disputes it receives from consumers disputing information in their Defendant files.

151. Defendant never added a 100-word statement to Mr. Bunch's credit file.

Mr. Bunch seeks all available relief pursuant to law. This includes without limitation: punitive and actual damages including for emotional distress, pre-and post-judgment interest, fees and costs.

## JURY DEMAND

Plaintiff demands a jury trial on all issues herein.

Respectfully submitted,
/s/ Duran L. Keller
Duran L. Keller (#31743-79)
**KELLER LAW**
P.O. Box 1248
Lafayette, Indiana 47902
Telephone: (765) 444-9202
Facsimile: (765) 807-3388
Email: duran@kellerlawllp.com
*Attorney for Matthew Bunch*
